**Larry ROBINETT, Appellant,**

v.

**Douglas Nelson CARLISLE, Appellee.**

**No. 2–96–074–CV.**

Court of Appeals of Texas,
Fort Worth.

June 27, 1996.

Rehearing Overruled Aug. 15, 1996.

W. Andrew Messer, Wichita Falls, for appellant.

Holly Crampton, Crampton & Crampton, Wichita Falls, for appellee.

Before LIVINGSTON, BRIGHAM and HOLMAN, JJ.

## OPINION

BRIGHAM, Justice.

■ This interlocutory appeal stems from a civil rights action filed under 42 U.S.C. § 1983 (1994) by Douglas Carlisle.[1] Appellant Larry Robinett challenges trial court's denial of a partial summary judgment based upon his assertion of qualified immunity. Because we find that partial summary judgment was improperly denied, we reverse the order of the trial court and render summary judgment for Robinett based on his qualified immunity.

---

1. State courts have concurrent jurisdiction over cases brought under the provisions of section 1983. *See Martinez v. California*, 444 U.S. 277, 283, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488 (1980). This court has previously held that a suit for damages comes within the provisions of section 1983. *See Texas Educ. Agency v. Leeper*, 843 S.W.2d 41, 48 (Tex.App.—Fort Worth 1991), *rev'd in part on other grounds*, 893 S.W.2d 432 (Tex.1994).

## BACKGROUND

Robinett is a police officer in Wichita Falls, Texas. During the early morning hours of January 29, 1993, he and other officers with the North Texas Drug Enforcement Task Force executed a search warrant for illegal drugs at 2142 Avenue E in Wichita Falls. The officers believed that the suspects inside the residence could be armed and dangerous.

The police officers announced their presence and used a battering ram to knock the front door down after they were denied entry to the house. Robinett was the first officer to enter the house and was followed by Officer Albert Chapa. Robinett, wearing a uniform with the word "POLICE" emblazoned on the front and back of it, carried a flashlight in one hand and his gun in the other one.

As Robinett scanned the darkened room with his flashlight, he saw Carlisle lying face-up on a couch. Robinett shouted "Police" and ordered Carlisle to get down onto the floor. Carlisle did not get on the floor and, instead, pointed a handgun at Robinett's chest. Robinett began firing in self-defense and shot Carlisle four times. Carlisle was taken to Wichita General Hospital and has since been convicted of aggravated assault on a peace officer and illegal possession of a firearm by a felon.

Carlisle sued Robinett, claiming that Robinett used excessive and unreasonable force. Robinett moved for partial summary judgment, asserting qualified immunity. Carlisle responded that Robinett entered the residence illegally and failed to identify himself as a police officer before using deadly force. Partial summary judgment was denied based on state law.

## POINT OF ERROR ONE

■ In his first point of error, Robinett claims the trial court erred in applying state, rather than federal, law. Carlisle sued Robinett under section 1983, claiming that the officer violated his federal civil rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Robinett asserted the defense of qualified immunity and relied upon federal law in his motion for partial summary judgment. However, the trial court apparently relied upon state law in denying partial summary judgment, noting in a letter to counsel that Carlisle "presented sufficient ... evidence to controvert the element of 'good faith' required to establish ... qualified immunity."

The "good faith" element is a component for the affirmative defense of qualified immunity under state law. *City of Lancaster v. Chambers,* 883 S.W.2d 650 (Tex.1994). Federal law governs this case. *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 790 (3rd Cir.1995); *USX Corp. v. Champlin,* 992 F.2d 1380, 1385 (5th Cir.1993); *Reese v. Anderson,* 926 F.2d 494, 500 (5th Cir.1991). Robinett's assertion of qualified immunity should have been evaluated under federal, and not state, law. Accordingly, point of error one is sustained.[2]

## POINT OF ERROR THREE

■ Robinett further contends he was entitled to qualified immunity based on federal law. Robinett had been warned that the suspects inside the house could be armed and dangerous and he entered the house pursuant to a search warrant. Police officers executing the warrant identified themselves as such while attempting to enter the premises. Robinett was wearing a jacket with "POLICE" printed on the front and back of the jacket. Although he ordered Carlisle onto the floor, Carlisle pointed a gun at Robinett's chest.

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker*

---

2. In his second point of error, Robinett claims that the trial court erred in denying his motion for partial summary judgment because he is entitled to qualified immunity under state law. Be-cause our analysis of points of error one and three disposes of this appeal, we have no need to address point of error two.

*v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

■ Qualified immunity is a substantive right belonging to police officers. *Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir.1995). Police officers are immune if they could have reasonably believed their actions to be lawful in light of clearly established law and the information the officers possessed. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 595–96 (1991). Even if law enforcement officials err, they are entitled to qualified immunity if their decision was reasonable. *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 435 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994).

■ In determining whether an officer has crossed the constitutional line in the use of force, attention is focused on the severity of the subject crime, whether the suspect posed an immediate threat to the safety of the officer, and whether the suspect was actively resisting arrest. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 455 (1989). These determinations must be made without the luxury of hindsight:

> We must avoid substituting our personal notions of proper police procedure for the

instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Stroik v. Ponseti,* 35 F.3d 155, 158–59 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995) (citing *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.), *cert. denied,* 504 U.S. 915, 112 S.Ct. 1954, 118 L.Ed.2d 557 (1992)).

■ Although the test for qualified immunity under state law is whether the officer was acting in good faith, *Chambers,* 883 S.W.2d at 655–56, the test under federal law is one of objective reasonableness:

> Although the cases sometimes refer to the doctrine of qualified "good faith" immunity, the test is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith.
>
> 'We look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred.' Thus, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'

*Swint v. City of Wadley,* 5 F.3d 1435, 1441–42 (11th Cir.1993) (citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 1312, 131 L.Ed.2d 194 (1995).

Carlisle concedes in his brief that the parties agree Robinett was acting within his discretion and within the scope of his official capacity. He contends, however, that the summary judgment failed to establish his "objective good faith based on objective legal reasonableness." [3]

Carlisle argues that the affidavit used to obtain the search warrant indicates that the marijuana police sought was more likely to be found at 1409 Fulton Street (located di-

---

**3.** Carlisle's use of the "good faith" test implies a reliance upon state law, and in fact the authority he relies upon is state, rather than federal, case law. Although we now evaluate the evidence under the federal, rather than state, qualified immunity standard (as discussed in point of error one), the summary judgment proof provided by both parties is still clearly relevant.

rectly behind 2142 Avenue E) rather than the address listed in the search warrant and the address where Carlisle was at the time of the shooting. Carlisle asserts that the affidavit is "bare bones" and "so lacking in *indicia* of probable cause as to render official belief in its existence entirely unreasonable." Carlisle also maintains that the officers used excessive force to enter the residence because they broke down the door before being refused admission after giving notice of their authority and purpose. In effect, Carlisle argues that because Robinett's initial entry into the residence was illegal, Carlisle was justified in using deadly force to protect himself, and the officer was not officially immune from firing in return.

Robinett recited in his affidavit that he believed he had probable cause to enter the residence at 2142 Avenue E and entered pursuant to a search warrant. Whether the affidavit was sufficient to support the search warrant is an issue separate from the objective reasonableness of Robinett's entry once the warrant had been issued. Robinett stated that the warrant was executed shortly after 12:15 a.m. and that it was extremely quiet outside at that time of night.[4] Although Carlisle contends that the officers broke down the door "before being refused admission after giving notice of their authority and purpose," Robinett testified that police officer Al Chapa "yelled 'Police, search warrant'" as the door was struck.[5] Officer Chapa's shout was, Robinett estimated, loud enough to be heard within a one-block area. Robinett also said that the door was hit with

a battering ram nearly a dozen times and that it was difficult to enter the house because the ram punched a hole in the door before the lock gave way. Robinett said that the noise "practically shook the house." Upon entry, Robinett saw Carlisle. It was only after Carlisle refused Robinett's order to get onto the floor and pointed the gun at the officer's chest that Robinett fired his weapon.

Wichita Falls Police Chief Curtis Harrelson testified that, based upon his 37 years' experience as an officer, Robinett acted within the "acceptable, reasonable, and lawful parameters of proper police training and conduct." We conclude that it was objectively reasonable for Robinett to assume that the occupants of the house were sufficiently apprised of his identity and purpose for entry given the loudness of the police officer's announcement and the length of time that it took the officers to enter the building. Although Carlisle told investigators that he had been sleeping, was awakened when the door came "flying open," and grabbed his pistol in self-defense upon seeing silhouettes, this, also, has no bearing on the objective legal reasonableness of *Robinett's* actions. As a result, point of error three is sustained.

The order of the trial court is reversed and we render summary judgment for Robinett based upon his qualified immunity.

---

**4.** Robinett's testimony from Carlisle's criminal trial was attached to Carlisle's response to the motion for summary judgment and is heavily relied upon by Carlisle in this appeal.

**5.** Carlisle contends that the "custom implemented by the City of Wichita Falls is for officers to break down the door upon their arrival" and relies upon the testimony of a police officer at Carlisle's criminal trial. When asked why police used battering rams, the officer responded as follows:

> As with most places that I've had dealings with where illegal drugs are dealt, the people in there are afraid that the police are going to catch them, and they constantly make plans on how to keep from being caught. One of them being using lookouts. One of them being grab the stash and flush it if you see the police

coming. And time is of the essence to not only obtain the evidence, but it's also important to us on some places to use the element of surprise in order to safeguard the officers and the evidence that would be there.

The officer then stated that the police didn't "just go up and knock on the door" to prevent the destruction of evidence and to safeguard themselves.

The United States Supreme Court has held that the common law "knock and announce" principle forms part of the reasonableness inquiry. *See Wilson v. Arkansas,* — U.S. —, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Given that Robinett had been warned that the occupants of the house could pose a serious danger to police officers and that the officers feared destruction of the evidence, the policy described by Wichita Falls police officials and followed by Robinett in this instance was objectively reasonable.