**Vance WALLACE, Appellant,**

v.

**Martin MOBERLY, Justin Foia, Rob Dixon and Casey Collins, Appellees.**

**No. 2–96–322–CV.**

Court of Appeals of Texas, Fort Worth.

May 8, 1997.

Rehearing Overruled July 17, 1997.

---

Dan Morales, Attorney General, Jorge Vega, First Asst. Attorney General, Drew T. Durham, Deputy Attorney General for Criminal Justice, Ann Kraatz, Asst. Attorney General, Chief, Law Enforcement Defense Division, Reed Lockhoof, Asst. Attorney General, and Mark Kosanovich, Asst. Attorney General, Austin, for Appellant.

Richard B. Tanner, Dallas, for Appellees.

Before DAY, LIVINGSTON and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

This is an interlocutory appeal from a denial of appellant Vance Wallace's motion for summary judgment on the issues of official and qualified immunity. Appellees Martin Moberly, Justin Foia, Rob Dixon, and Casey Collins[1] sued Wallace, a game warden employed by the Texas Parks and Wildlife Department (TPWD),[2] alleging violations of 42 U.S.C. § 1983, negligence, gross negligence, assault, battery, false arrest, and false imprisonment. The trial court granted Wallace's motion for summary judgment as it applied to him "while acting in his official capacity as a peace officer." The court denied, however, Wallace's motion for summary judgment as it applied to him "in his individual and unofficial capacity." We affirm.

## STANDARD OF REVIEW

■ Normally, an order overruling or denying a motion for summary judgment is not a proper subject for appeal. *Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex.1994); *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex. 1980). However, when a court denies a motion for summary judgment based on an assertion of immunity by an officer or employee of the State, the officer or employee may appeal. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1997); *City of Corinth v. Gladys,* 916 S.W.2d 618, 621 (Tex. App.—Fort Worth 1996, no writ).

■ The issue in this appeal is whether Wallace, the movant, met his summary judgment burden by establishing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on Wallace, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and we will resolve all doubts about the existence of a genuine issue of material fact in favor of Moberly. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to Moberly. *Great Am.,* 391 S.W.2d at 47.

■ In deciding whether there is a material fact issue precluding summary judgment, we will disregard all conflicts in the evidence and accept evidence favorable to Moberly as true. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). We will not consider evidence that favors Wallace's position unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

We will reverse the trial court's denial of summary judgment only if the record estab-

---

1. The appellees are all represented by the same counsel and present the same arguments on appeal. For simplicity, we will refer to the appellees together as "Moberly."

2. Moberly also sued the State of Texas and the TPWD, but those claims are not the subject of this appeal.

lishes that Wallace has conclusively proved all essential elements of his immunity defense as a matter of law. *See City of Houston,* 589 S.W.2d at 678.

### FACTS

Viewed in the light most favorable to Moberly, the summary judgment record reveals the following facts. Wallace is and at all relevant times was employed as a game warden by the TPWD. On October 27, 1993, Wallace was off duty. He was wearing a gray T-shirt and blue jeans. He did not have his badge or any other type of official "identifying device," nor was he wearing any type of uniform that would indicate that he was a Game Warden or any other type of peace officer. He and his wife were waiting in the drive-through line at a fast food restaurant. He was driving his unmarked personal vehicle rather than his state vehicle.

While waiting in line at the restaurant, Wallace saw a car driven by Moberly approach the line of vehicles waiting to enter the drive through and then "cut in line" in front of two or three vehicles including his. He thought that "[d]rugs or intoxication possibly could be why [the occupants] are acting in such a brave, you know, fashion." However, he also conceded that it could have been that "they were just rude and offensive." Nowhere in the summary judgment evidence does Wallace state that he believed that Moberly had committed any criminal offense. Moreover, Wallace conceded that he did not witness any "unsafe driving practices."

At some point, Wallace told his wife that he was "going to go talk to these folks and see if they don't realize that we're waiting also." His wife replied, "Honey, you don't even have your gun." He responded "Yes, I do," meaning that it was in the truck. He then took two or three steps to the front of his vehicle and toward the vehicle driven by Moberly. At this point, he "realized that if I encountered some unexpected problem with the people in the Moberly vehicle that I would rather have my gun, if possibly they drew a weapon on me, maybe." So, he went back to get his "off-duty" gun, a silver revolver with a three inch barrel. He put the gun in the waistband of his blue jeans, underneath his T-shirt, and proceeded toward the vehicle driven by Moberly.

Moberly and his three passengers, all Grapevine High School Students, were going to the restaurant for lunch. They pulled into the restaurant parking lot and saw a space between the cars in the drive-through. Moberly pulled his car into that space. Before they saw Wallace approach, Moberly and the passengers in his car "laughed at the idea that we just cut in line." But then they "realized there was no reason to do what we did," and decided to back the car out of the line and park so they could go inside to eat. As Moberly attempted to back his car out of the line, he saw Wallace retrieve the gun from his truck, place it in the waistband of his jeans, and begin to walk toward their car with his hand constantly on the butt of the revolver. Collins and Foia also saw Wallace approach with his revolver. Moberly exclaimed "Oh shit, he's got a gun," and immediately put the car in reverse and accelerated. This caused his car to collide with the car immediately behind him. Moberly testified that with gun now drawn, Wallace ran at Moberly's car "without hesitation." Then Moberly collided with three more cars while attempting to flee, and eventually "slammed up onto a curb and was still." Wallace then came to Moberly's windshield with his gun pointed at Moberly's head, and walked around the car keeping his gun aimed at Moberly. Moberly heard his three passengers "screaming for the fear they had for their own lives." With Moberly pleading "Please don't shoot me, I just got shot three months ago," Wallace ordered him and the other passengers out of the car at gunpoint.

Up until this point, Moberly and his passengers had no idea that Wallace was a peace officer. Wallace had not identified himself as a peace officer or any kind of official, and they could see that he was not in uniform, did not display a badge or any identification, and was not in an official vehicle.

After all four passengers had gotten out of the car, Wallace grabbed the back of Moberly's shirt and "for the first time mentioned that he happened to be a law officer (game warden)." Wallace told the four boys to get

against the wall of the restaurant and pushed Moberly in that direction.

An older man who witnessed the incident yelled at Wallace saying that "he was crazy" for acting the way he did. Wallace told the man to call the police, but the man replied that he had already called the police on Wallace.

After the Grapevine police arrived, no one was arrested or taken to jail. Moberly was never given a traffic citation, nor were he or any of his passengers ever charged with a crime.

## ANALYSIS

### A) Official Immunity to State Law Causes of Action

In his first point of error, Wallace argues that the trial court erred by denying his motion for summary judgment because he is entitled to official immunity from Moberly's state law causes of action. Official immunity is an affirmative defense. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). Thus, for Wallace to prevail on this argument, we would have to find that all of the elements of official immunity were established as a matter of law by the summary judgment evidence. *Id.; see also City of Houston*, 589 S.W.2d at 678. The necessary elements of Wallace's claim are:

1) he was performing a discretionary duty;
2) he was acting within the scope of his authority; and
3) he was acting in good faith.

*City of Lancaster*, 883 S.W.2d at 653.

Wallace argues that he has proved, as a matter of law, that he was acting within the scope of his authority. If an official is discharging the duties generally assigned to him or her, that official is acting within the scope of his or her authority. *City of Lancaster*, 883 S.W.2d at 659. As a Texas Parks and Wildlife Department Game Warden, Wallace is a law enforcement officer. *See* TEX.PARKS & WILD.CODE ANN. § 11.019 (Vernon 1991); TEX.CODE CRIM.PROC.ANN. art.

2.12(10) (Vernon Supp.1997). As such, it is Wallace's duty to "preserve the peace within his jurisdiction" while using "all lawful means." TEX.CODE CRIM.PROC.ANN. art 2.13 (Vernon 1977). Thus, Wallace may arrest an offender for any offense committed within his view. TEX.CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1977). Moreover, the fact that Wallace was not on duty is not dispositive of whether he was acting within the scope of his authority: an off-duty officer who observes a crime immediately becomes an on-duty officer. *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex.App.—Dallas 1994, no writ).

However, the evidence in the summary judgment record raises an issue of material fact as to whether Wallace was investigating a criminal offense committed within his view. First, we note that "cutting in line" is not a crime specified in the Penal Code. Second, Wallace's own testimony indicated that he did not witness any "unsafe driving practices." Additionally, the record is devoid of any statement by Wallace indicating what, if any, criminal activity he believed to be afoot or any evidence indicating why that belief would be reasonable. As such, there is an issue of material fact as to whether Wallace was acting on a reasonable suspicion that a crime was being committed.

Moreover, before he retrieved his gun and approached Moberly's car, Wallace told his wife that he was "going to go talk to these folks and see if they don't realize that we're waiting also." A reasonable trier of fact could interpret this evidence to show that rather than acting as a licensed peace officer trying to keep the peace or investigate criminal activity, Wallace was acting as someone who was angry because a car full of teenagers cut in line in front of him at a fast food restaurant.

Accordingly, we hold that Wallace did not establish as a matter of law that he was acting within the scope of his authority.[3] Therefore, the trial court did not err in denying Wallace's motion for summary judgment

---

3. Because we hold that there is an issue of material fact as to whether Wallace was acting within the scope of his authority, we do not address whether there is an issue of material fact as to whether Wallace was performing discretionary duties or whether he acted in good faith.

because there is an issue of material fact on a necessary element of Wallace's affirmative defense of official immunity to Moberly's state law claims. We overrule Wallace's first point of error.

### B) Qualified Immunity to § 1983 Claims

In his second point of error, Wallace argues that the trial court erred by denying his motion for summary judgment because he is entitled to qualified immunity to Moberly's federal law claims. Moberly's amended petition alleges that Wallace violated United States Code, Title 42, section 1983 by using excessive force and committing assault, battery, false arrest, and false imprisonment.

We must analyze this issue under applicable federal law. *See Robinett v. Carlisle,* 928 S.W.2d 623, 625 (Tex.App.—Fort Worth 1996, writ denied). Under federal law, peace officers have a substantive right to qualified immunity. *Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir.1995) (op. on reh'g) (en banc); *Robinett,* 928 S.W.2d at 626. Wallace is entitled to qualified immunity if he could have reasonably believed his actions to be lawful in light of clearly established law and the information he possessed. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 595–96 (1991); *Robinett,* 928 S.W.2d at 626. Even if Wallace erred in his actions, he is entitled to qualified immunity if his decisions were reasonable. *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 435 (5th Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994).

Wallace has not met his summary judgment burden of establishing as a matter of law that his actions were reasonable. First, as we have noted above, "cutting in line" is not a criminal offense and Wallace concedes that he did not witness any "unsafe driving practices." The record reflects a lack of testimony from Wallace *indicating* what, if any, criminal activity he was investigating. Also, Wallace testified that he told his wife he was "going to go talk to these folks and see if they don't realize that we're waiting also." Finally, the evidence viewed in the light most favorable to Moberly indicates that Wallace approached the car with his hand on the butt of his gun and that he did not attempt to identify himself and he was not dressed in a manner that would indicate that he was a peace officer. This evidence is sufficient to raise an issue of material fact as to whether Wallace was acting reasonably.

Accordingly, we hold that Wallace did not establish as a matter of law that he was acting reasonably. We hold the trial court did not err in denying Wallace's motion for summary judgment because there is an issue of material fact on a necessary element of Wallace's affirmative defense of qualified immunity to Moberly's federal claims. Therefore, we overrule Wallace's second point of error.

Having overruled both of Wallace's points of error, we affirm the judgment of the trial court.