In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00452-CV
_____

IRAM ALEJANDRO HERNANDEZ, Appellant

V.

KEVIN BLACKBURN, Appellee

On Appeal from the 258th District Court
Polk County, Texas
Trial Cause No. CIV29742

MEMORANDUM OPINION

Iram Alejandro Hernandez sued Kevin Blackburn for injuries sustained as a result of Blackburn administering pepper spray during an altercation at a high school soccer game. Blackburn, an officer employed by Livingston Police Department, was assigned to Livingston High School as a School Resource Officer and worked the soccer game. In his petition, Hernandez asserted causes of action for assault and

1

battery and negligence.[1] Blackburn filed a traditional motion for summary judgment based on the affirmative defense of official immunity, which the trial court granted. Hernandez timely appealed, and in one issue, contends the trial court erred in granting summary judgment in favor of Blackburn. Hernandez presents several arguments in support of this issue. We affirm the trial court's judgment.

## Background

On January 31, 2014, Livingston High School's soccer team was completing against Jasper High School's soccer team. Following a foul, the teams began fighting. Hernandez, recovering from a knee injury, had not played in the game but

---

[1] In his brief, Hernandez claims he sued seeking money damages resulting from the "assault and arrest" that caused "false criminal charges to be brought" against him. Despite these assertions in his brief, the administration of pepper spray is the sole incident alleged in his petition as giving rise to his claims. Blackburn's motion for summary judgment addressed only the pepper spray incident, but Hernandez's response to the motion for summary judgment sought to address Hernandez's arrest later that evening. Blackburn objected at the summary judgment hearing to any claims of unlawful arrest, as no such claim had been pleaded. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (discussing allegations not in pleadings and then raised for the first time by a non-movant in response to summary judgment). The trial judge responded that the hearing was on the defendant's motion for summary judgment "based on the pleadings." Hernandez did not dispute this and agreed to address the motion for summary judgment on the assault claim. While the record is replete with facts about Hernandez's arrest, we address only his claims related to the administration of pepper spray. Since Hernandez had not alleged any claims for unlawful arrest or detention in his live pleading, those claims were not before the trial court. The trial court's judgment conformed to the pleadings. Tex. R. Civ. P. 301.

was in his uniform on the sideline. When the fighting erupted, Hernandez ran onto the field and threw a punch at Miguel Fernandez (Miguel) but missed the intended target. Blackburn also made his way onto the field when the fighting began and broke up several groups of people engaged in separate altercations before turning his attention to Hernandez and Miguel.

According to Blackburn, both Hernandez and Miguel were actively throwing punches when he first observed them. Miguel managed to get Hernandez on the ground in some version of a chokehold. Miguel was on the ground underneath Hernandez with his arm around Hernandez's neck, and Hernandez's back was on top of Miguel's chest. Blackburn repeatedly told Hernandez and Miguel to stop fighting, but they refused to comply, and Miguel continued holding Hernandez around the neck, and Hernandez continued kicking, hitting, and punching toward Miguel. When verbal warnings proved ineffective, Blackburn said he tried to physically remove Miguel's arm from Hernandez's throat. Blackburn testified this was also unsuccessful, because Hernandez continued to flail, and Miguel would not release him. At that point, Blackburn said he warned them that if they did not stop, he would administer pepper spray. Ultimately, Blackburn administered the pepper spray in a short burst to break up the fight between Hernandez and Miguel. He said his reason for breaking up the fight was so that they would not hurt one another and

so he could turn his attention to other matters on the field. He testified that the pepper spray was effective, and the fighting stopped.

Hernandez admitted to running on the field and throwing a punch that did not make contact. According to Hernandez, then someone grabbed him from behind, put him in a chokehold, and got him on the ground. In his testimony, Hernandez complained that he could not breathe while Miguel had him around the neck, and Hernandez feared he would pass out. According to Hernandez, he asked Miguel to let go and told him he could not breathe. Hernandez indicated he hit Miguel in an attempt to free himself from the chokehold. Hernandez testified that he did not see Blackburn approach or hear him speak prior to being pepper sprayed.

Hernandez's and Blackburn's versions of events were consistent in key respects. The undisputed facts are that a fight erupted at a soccer game. Blackburn was the only officer at the scene when the fighting started. Hernandez ran onto the field and engaged in the fighting. Miguel wrestled Hernandez onto the ground and had him in a chokehold. Other fights were taking place at the same time. Blackburn administered pepper spray in the direction of Hernandez and Miguel while they were on the ground. Pepper spray contacted Hernandez's face, causing his eyes to burn and irritation of his throat.

4

Hernandez sued Blackburn for assault and battery and negligence arising out of Blackburn's administration of pepper spray. Blackburn moved for summary judgment based on the affirmative defense of official immunity, which the trial court granted. Hernandez timely appealed the judgment.

**Standard of Review**

We review a trial court's ruling on a motion for summary judgment *de novo*. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citation omitted). We take as true all evidence favorable to the nonmovant and resolve doubts the nonmovant's favor. *Id.* (citations omitted); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (citations omitted). No issues of material fact may exist. *See Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848 (citation omitted); *see also* Tex. R. Civ. P. 166a(c). If the movant meets his burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995) (citations omitted). When a defendant moves for summary judgment on the affirmative defense of official immunity, the defendant must conclusively establish each element of the defense as a matter of law. *See* Tex. R. Civ. P. 166a(b), (c); *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008) (citing *McIntyre v. Ramirez*,

5

109 S.W.3d 741, 742, 748 (Tex. 2003)); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (citations omitted).

## Analysis

Texas recognizes official immunity as an affirmative defense protecting government employees from personal liability. *See Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000) (citation omitted); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465–66 (Tex. 1997); *Chambers*, 883 S.W.2d at 653 (citation omitted). "A governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Clark*, 38 S.W.3d at 580 (citing *Chambers*, 883 S.W.2d at 653). The rationale for the common law doctrine of official immunity is the need for public servants "to act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004).

Hernandez presents several arguments complaining Blackburn failed to establish the requisite elements of official immunity in support of his issue that the trial court erred in granting Blackburn's motion for summary judgment. Hernandez contends that Blackburn did not prove he was performing discretionary duties,

6

within the scope of his authority, or that he acted in good faith. In analyzing whether the summary-judgment evidence conclusively establishes the official immunity defense, we must determine whether there are disputed facts material to the elements of the defense. *See Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002).

## A. Performance of Discretionary Duties

To be entitled to official immunity, a defendant must first establish that he was performing a discretionary function. *See Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994); *Chambers*, 883 S.W.2d at 653. "Discretionary functions receive protection, but ministerial duties do not." *Kassen*, 887 S.W.2d at 9 (citing *Chambers*, 883 S.W.2d at 653–54).

> Ministerial acts are those "[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment . . . but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial" . . . If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial.

*Chambers*, 883 S.W.2d at 654 (internal citations omitted); *see also Ballantyne*, 144 S.W.3d at 425; *Kassen*, 887 S.W.2d at 9. The key inquiry in determining whether a governmental employee's act is discretionary focuses on whether the employee is performing a discretionary function, not on whether the employee has discretion to do an allegedly wrongful act when discharging that function. *Hidalgo Cty. v.*

7

*Gonzalez*, 128 S.W.3d 788, 793–94 (Tex. App.—Corpus Christi 2004, no pet.) (citing *Chambers*, 883 S.W.2d at 653).

In this case, the evidence showed Blackburn had to make several decisions when the fighting began. First, he had to determine whether (as the only officer) he would enter the fracas and separate the fighting players. He testified that he broke up several fights using verbal commands before encountering Hernandez and Miguel. The video corroborates this. Once upon them, he had to determine the best way to separate them. He decided to use verbal commands, followed by physically trying to remove Miguel's arm from Hernandez's neck. When that failed to stop the fighting, Blackburn employed the use of pepper spray which immediately caused Hernandez and Miguel to disengage.

The testimony of Blackburn established this, as well as the testimony of his supervisor, Lieutenant Parrish. Blackburn testified in his deposition that no one instructed him to take the field, rather he made that decision himself. In his affidavit, Lieutenant Parrish asserts that Blackburn "was responding to an emergency situation and, therefore, performing a discretionary duty within the scope of his authority as a Livingston Police Officer." Moreover, in his deposition, Lieutenant Parrish testified that where to go on the "continuum of force" was a judgment call. Although Hernandez asserts on appeal that Blackburn failed to establish this element of his

8

affirmative defense, he offers no evidence to controvert the testimony of Blackburn or Lieutenant Parrish that would prove the acts were ministerial. Because the evidence established that Blackburn's actions required the use of judgment, we determine that he was performing a discretionary function. *See Chambers*, 883 S.W.2d at 653.

## B. Within Scope of Authority

The second element a defendant must prove in an official immunity defense is that they were acting within the scope of their authority. *See Clark*, 38 S.W.3d at 580 (citation omitted). "An officer acts within the scope of his authority when he performs his official duties[.]" *Harris Cty. v. Ochoa*, 881 S.W.2d 884, 888 (Tex. App.—Houston [14th Dist.] 1994, writ denied). This element "is satisfied if the official is discharging the duties generally assigned to him or her." *Powell v. Foxall*, 65 S.W.3d 756, 763 (Tex. App.—Beaumont 2001, no pet.) (citing *Chambers*, 883 S.W.2d at 658). Additionally, even if the specific act made the basis of the lawsuit may be negligent, it does not mean an officer acted outside the scope of his authority. *Ochoa*, 881 S.W.2d at 888. That an officer is off-duty is not dispositive of whether he was acting within the scope of his authority, and "an off-duty officer who observes a crime immediately becomes an on-duty officer." *Wallace v. Moberly*, 947 S.W.2d 273, 277 (Tex. App.—Fort Worth 1997, no writ) (citing *City of Dall. v. Half*

9

*Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex. App.—Dallas 1994, no writ)). The Texas Supreme Court determined before that an off-duty deputy who stopped on a roadway to render assistance at an accident scene was entitled to official immunity. *See DeWitt v. Harris Cty.*, 904 S.W.2d 650, 651 (Tex. 1995). "Determining when an officer is acting within the scope of his authority depends on whether the officer is discharging a duty generally assigned to him." *Junemann v. Harris Cty.*, 84 S.W.3d 689, 693 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (citing *Chambers*, 883 S.W.2d at 658).

Lieutenant Parrish testified that Blackburn was an employee of and an officer for the Livingston Police Department, specifically a "school resource officer." Lieutenant Parrish explained in his deposition that Officer Blackburn was a "regular police officer[,]" but his duty assignment was at Livingston High School. Although Blackburn briefly confirmed in his deposition that he was working the soccer game off-duty, Lieutenant Parrish testified that Blackburn was working his regular assignment the evening of the soccer game. Lieutenant Parrish also stated in his affidavit that Officer Blackburn was acting within the scope of his authority. In any event we do not find the fact that Blackburn may have been off-duty dispositive. *See Garza v. Harrison and Santenella*, No. 17-0724, 2019 WL 2237875, at *8 (Tex. May 24, 2019) (quoting *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 344

10

(Tex. App.—Houston [14th Dist.] 2003, no pet.)) ("'If an off-duty officer observes a crime, as a matter of law he becomes an on-duty officer.' Peace officers are therefore relatively unique among governmental employees as they may be required to spring into action at a moment's notice, even while off duty."). When Blackburn went onto the field to try to break up the altercations and restore order, including breaking up the fight between Hernandez and Miguel, he was discharging a duty generally assigned to him. *See id.; Chambers*, 883 S.W.2d at 658; *Junemann*, 84 S.W.3d at 693.

Hernandez's expert, Captain Danny Walker, states that as an off-duty officer, Blackburn was

> immediately subject to [the] direction of his supervisors in the Livingston Independent School District, or by his peace officer[']s oath to intervene if he reasonably perceive[d] the facts to present probable cause that a crime was being committed or was imminent. There [was] no evidence that Blackburn was directed to intervene between the referees and our coaches and their players on the field.

Captain Walker's affidavit completely disregards the testimony by both parties and video evidence that a large fight broke out during the soccer game. Captain Walker concedes in the affidavit that Blackburn was subject to his peace officer's oath. As an officer for the Livingston Police Department, even if he were off-duty, once the fighting started Blackburn became an on-duty officer. *See DeWitt*, 904 S.W.2d at 651; *Wallace*, 947 S.W.2d at 277 (citation omitted).

11

Despite Hernandez's contention on appeal that "no crime or exigency triggered Blackburn's police duties" and Blackburn acted outside his authority, he has offered no competent summary-judgment evidence to counter the testimony of Blackburn and Lieutenant Parrish. As a result, we conclude that Blackburn conclusively established he acted within the scope of his authority during this incident.

## C. Good Faith

As for the good faith element of the official immunity affirmative defense and its standard, the Texas Supreme Court explained that it "is analogous to the abuse of discretion standard of review utilized by an appellate court when reviewing certain trial court rulings: an abuse of discretion is shown only if the trial court could not have reasonably reached the decision in question." *Chambers*, 883 S.W.2d at 657 n.7 (citing *Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex. 1970)). Conclusory statements that a reasonable officer could or could not have acted a certain way neither establishes good faith nor raises a fact issue on summary judgment. *Clark*, 38 S.W.3d at 581 (citing *Wadewitz*, 951 S.W.2d at 467). Instead, testimony regarding good faith must address what a reasonable officer could have believed under the circumstances and must be supported by facts establishing the officer assessed both the need to act and the risk to the public. *Id.*

12

To establish good faith, an officer must show he assessed the availability of other alternatives as part of balancing the need and the risk. *Wadewitz*, 951 S.W.2d at 467; *see also Clark*, 38 S.W.3d at 587–88. When an expert's testimony on good faith is unsupported on each aspect of the need and risk balancing test, it is conclusory and insufficient to controvert the defendant's proof on good faith. *Clark*, 38 S.W.3d at 587–88; *Wadewitz*, 951 S.W.2d at 467. "The 'need' aspect of the test refers to the urgency of the circumstances requiring police intervention[,] [and the] 'risk' aspect of good faith…refers to the countervailing public safety concerns[.]" *Wadewitz*, 951 S.W.2d at 467. "When a public official considers two courses of action that could reasonably be believed to be justified, and selects one, he satisfies the good faith prong of official immunity as a matter of law." *Ballantyne*, 144 S.W.3d at 426.

During his deposition, Blackburn described the fighting as involving several individuals from two high school soccer teams. Hernandez corroborated this in his own account of the incident. The parties also agree that Hernandez was involved in the melee. Hernandez testified in his deposition that he ran onto the field and swung a punch that missed the intended target. Miguel then wrestled him to the ground and placed him in a chokehold. Blackburn agreed that Miguel had Hernandez on the ground in what appeared to be a chokehold. Officer Blackburn described Hernandez

hitting at Miguel. Hernandez explained he was trying to get out of the chokehold while on the ground by hitting at Miguel. When the fighting broke out, Blackburn was the only law enforcement official present. The key underlying facts of the altercation are not in dispute.

Hernandez testified he could not breathe while he was in the chokehold, and he was afraid he was going to pass out. Blackburn testified that it appeared to him Miguel had Hernandez in a chokehold, which he acknowledged was dangerous and could cut off the blood supply to a person's brain. Officer Blackburn's testimony showed he repeatedly issued verbal commands that Miguel and Hernandez stop fighting. These commands were ineffective, so he tried to physically remove Miguel's arms from Hernandez's throat. This was also ineffective. Only when these attempts failed did Officer Blackburn administer pepper spray in a short burst, which hit Hernandez, and the two men immediately stopped fighting.[2] Officer Blackburn testified, "I didn't have any other choice. They weren't following directions and they were – I was worried about them getting hurt protecting themselves. They were going to end up hurting themselves, hurting each other." Officer Blackburn's testimony established that he assessed the need to respond quickly to the fighting

---

[2] Officer Blackburn explained he was trying to hit both young men with the pepper spray, and he learned later that the spray also made contact with Miguel.

generally and the specific altercation between these two young men. He also testified that he employed other alternatives before resorting to pepper spray, which established that he conducted a risk assessment.

The affidavit of Lieutenant Parrish explained that as the only officer on the scene, trying to handle multiple fights, it was important for Officer Blackburn to act quickly to break the fights up to avoid further injury. Lieutenant Parrish suggested this was especially true if Hernandez was afraid for his life. Lieutenant Parrish ultimately opined that Officer Blackburn acted "objectively reasonable" when responding to the incident. In support of that opinion, he outlined the underlying facts, including those pertinent to the need and the risk. Lieutenant Parrish pointed out that Officer Blackburn was the only officer on the scene and "broke up at least two fights by using verbal commands or by physically separating the players." He indicated that Officer Blackburn noticed Hernandez in a chokehold, considered and tried other options before resorting to pepper spray by "address[ing] the players verbally, but they continued to fight. He then physically attempted to pull the players apart. When that did not stop the fighting, he advised the players that he was going to administer chemical pepper spray. The players continued to fight." So, Officer Blackburn administered the spray, and they stopped fighting.

Although Captain Danny Walker's affidavit contains conclusory statements that there is "no demonstrated evidence that Kevin Blackburn had appropriate legal authority to act as he did[,]" and "engaged in an excessive use of force" in discharging the pepper spray, much of his affidavit focuses on the later arrest of Hernandez. Captain Walker states that a material question in "Blackburn's ability to assess the existence of reasonable basis for probable cause and judgment" and ponders how Blackburn could have done that "when he was only engaged in the incident between Hernandez and [Miguel] for 7 seconds." Hernandez's expert penalizes Blackburn for his decision making, because it occurred within a brief period. The good faith "standard does not penalize an officer for the inability to recognize or evaluate a risk due to circumstances beyond his control, like the need to make a split-second decision." *Martinez v. Harris Cty.*, 526 S.W.3d 557, 567 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Clark*, 38 S.W.3d at 583).

We note that Captain Walker does not employ the correct standard for good faith and views the incident between Miguel and Hernandez in a vacuum. Captain Walker's affidavit fails to address a risk and need assessment. He does not mention the danger Hernandez was in if the fight continued, nor does he mention balancing that risk with the other alternatives employed by Blackburn to stop the fight. He ultimately concludes that Officer Blackburn "was not justified in the use of

16

OC/chemical pepper spray[.]" "[A]n expert witness's conclusory statement that a reasonable officer could or could not have taken some action will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat summary judgment." *Wadewitz*, 951 S.W.2d at 466. Instead, the expert must "address what a reasonable officer *could have believed* under the circumstances," and the opinion "must be substantiated with reference to each aspect of the *Chambers* balancing test." *Id.* at 466–67 (citing *Chambers*, 883 S.W.2d at 656–57).

We determine Officer Blackburn conclusively established he acted in good faith, and when the burden shifted, Hernandez failed to present evidence that no reasonable officer could have believed using pepper spray under the circumstances was warranted. *See id.*; *Clark*, 38 S.W.3d at 587–88.

We overrule Hernandez's issue on appeal.

## Conclusion

Blackburn conclusively established all requisite elements of an official immunity affirmative defense. The trial court thus properly granted his motion for summary judgment. We affirm the trial court's judgment.

17

AFFIRMED

_____
CHARLES KREGER
Justice

Submitted on December 10, 2018
Opinion Delivered June 13, 2019

Before Kreger, Horton and Johnson, JJ.