NUMBER 13-99-511-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


DANIZA S. VILLARREAL
, Appellant,


v.



ART INSTITUTE OF 

HOUSTON, INC.
, Appellee.

___________________________________________________________________


On appeal from the 270th District Court


of Harris County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Yañez 

Opinion by Justice Dorsey



 Daniza Villarreal enrolled in the photography program at the Art
Institute of Houston, Inc. ("The Art Institute"). The Art Institute is a
technical college which offers various degree programs, but does not
offer transferrable college credit courses. Villarreal contends that its
representatives made numerous false representations to her regarding
the program, the school, and the costs. She took out guaranteed
student loans in order to pay for the program. She did not complete the
program, and did not repay the loans as required. She sued The Art
Institute of Houston, Inc. for fraud and breach of contract.

 Her case was tried to a jury. After the close of Villarreal's case, the
trial court directed verdict for The Art Institute on the breach of contract
claim. The jury found for The Art Institute on the fraud claims, and a
take nothing judgment was entered against Villarreal. She appeals this
judgment, contending that the trial court erred in directing verdict
against her on the contract claims, and that the evidence was legally
and factually insufficient to support the jury's finding on the fraud
claims.

Breach of Contract


 We hold the trial court did not err in directing verdict against
Villarreal on her breach of contract claims. Villarreal contends that her
contract with The Art Institute was partly written and partly oral, and
alleges that The Art Institute breached the contract in three ways:

 (1) failing to provide her with unlimited use of its
photography department facilities and equipment;


 (2) failing to provide her with college credits that could be
transferred to another college or university; and


 (3) failing to provide her with an associate's degree.


 Conversely, The Art Institute contends that its contract with
Villarreal--in its entirety--was embodied in one document, the
Enrollment Agreement. The Art Institute argues that it did not breach
the express terms of that contract, and that parol evidence is not
admissible to alter its terms. It appears the trial court granted directed
verdict on that basis.

Standard of Review for Directed Verdict


 A directed verdict is appropriate when reasonable minds can
draw only one conclusion from the evidence. Collora v. Navarro, 574
S.W.2d 65, 68 (Tex. 1978); Villegas v. Griffin Industries, 975 S.W.2d
745, 748­49 (Tex. App.--Corpus Christi 1998, no writ). Where the
plaintiff fails to present evidence in support of a fact essential to her
right to recover or where a defense against the plaintiff's cause of action
is conclusively proved or admitted, a directed verdict for the defendant
is proper. Villegas, 975 S.W.2d at 749. On review, we examine the
evidence in the light most favorable to the party against whom the
verdict was rendered and disregard all contrary evidence and
inferences. Qantel Bus. Sys. v. Custom Controls, 761 S.W.2d 302,
303-04 (Tex. 1988); Villegas, 975 S.W.2d at 749. When reasonable
minds may differ as to the truth of controlling facts, the issue must go
to the jury. Villegas, 975 S.W.2d at 749. When no evidence of
probative force on an ultimate fact element exists, or when the
probative force of slight testimony is so weak that only a mere surmise
or suspicion is raised as to the existence of essential facts, the trial
court has the duty to instruct the verdict. Nelson v. American Nat. Bank
of Gonzales, 921 S.W.2d 411, 415 (Tex. App.--Corpus Christi 1996, no
writ). The reviewing court may affirm a directed verdict even if the trial
court's rationale for granting the directed verdict is erroneous, provided
it can be supported on another basis. Kelly v. Diocese of Corpus Christi,
832 S.W.2d 88, 90 (Tex. App.--Corpus Christi 1992, writ dism'd w.o.j.).

Applicability of the Parol Evidence Rule


 Before deciding the merits of this case, we first address The Art
Institute's argument regarding the parol evidence rule. The trial court
appears to have granted directed verdict on the theory that the entire
agreement between The Art Institute and Villarreal was contained in the
Enrollment Agreement, a written document, and that parol evidence
was not admissible to alter the terms of the unambiguous contract.

 Essentially, the same argument was made in Texas Military
College v. Taylor, 275 S.W. 1089, 1091 (Tex. Civ. App.--Beaumont
1925, no writ). In that case, a parent who signed a promissory note to
pay the school's tuition contended that the school entered into a special
contract with him that was different from the terms contained in the
catalogue that his tuition notes would be forgiven if his asthmatic son
were unable to complete the semester due to his health. Id. The school
argued that its catalogue constituted a binding written contract that
could not be questioned by verbal testimony. Id. While the court
agreed with that general proposition so long as entrance is had under
the terms of the contract, Vidor v. Peacock, 145 S. W. 672, (Tex. Civ.
App.--San Antonio 1912); Peirce v. Peacock Military College 220 S. W.
191 (Tex. Civ. App.--San Antonio 1920); Aynesworth v. Peacock
Military College, 225 S. W. 866 (Tex. Civ. App.--Amarillo 1920);
Peacock Military College v. Hughes, 225 S. W. 221 (Tex. Civ. App.--San
Antonio 1920); Peacock Military College v. Scroggins, 223 S. W. 232
(Tex. Civ. App.--San Antonio 1920), it held that the school could also
enter into a special verbal contract under which entrance could be had,
and in that situation, evidence of the verbal contract would certainly be
admissible to show its terms. Id.

 We do not believe that the entire agreement between Villarreal and
The Art Institute was embodied in the Enrollment Agreement. That
document did not purport to contain every binding agreement between
Villarreal and The Art Institute. It contained general terms regarding the
amount of tuition, the policy for raising tuition, a notice that the student
had the right to cancel the transaction prior to the expiration of five days
from date of signing, a list of supplies, and other general policies of the
school, such as a note that the school reserves the right to cancel
enrollment of a student who does not appear to be making satisfactory
progress. Notably, the document did not include a clause stating that
it embodied all agreements between the parties.

 Under the parol evidence rule, extrinsic evidence is ordinarily not
admissible to add to, vary, or contradict the terms of a written contract
that is clear on its face. National Union Fire Ins. Co. v. CBI Indus., Inc.,
907 S.W.2d 517, 521 (Tex. 1995). However, we find that while the
promises contained in the enrollment agreement may be clear, it is not
clear that those are the only promises between the parties, and the
plaintiff testified that they were not. Rather, we find that the entire
agreement was made partly through written documents, partly through
oral representations, and partly through implicit promises ascertained
by the parties actions and surrounding circumstances.

 Directed verdict was therefore not appropriate on the grounds that
no parol evidence was admissible to vary the terms of the written
contract. However, we find that directed verdict was appropriate on
grounds that Villarreal did not present any evidence that the contract
contained the terms she alleges were breached by The Art Institute. 
See Kelly, 832 S.W.2d at 90 (directed verdict can be upheld on appeal
on different grounds than those upon which the trial court granted
directed verdict).

The Nature of a Contract Between a School and its Students


 A few Texas courts have addressed the issue of whether a
contract exists between a private educational institution and its
students. See e.g. Southwell v. University of Incarnate Word, 974
S.W.2d 351, 356 (Tex. App.--San Antonio 1998, pet. denied); Eiland v.
Wolf, 764 S.W.2d 827, 838 (Tex. App.--Houston [1st Dist.] 1989, writ
denied) (holding that school catalogue was not enforceable contract
when it contained express disclaimer that it did not constitute an
irrevocable contract between any student and the school); University of
Texas Health Science Center at Houston v. Babb, 646 S.W.2d 502, 506
(Tex. App.--Houston [1st Dist.] 1982, no writ) (holding that a
university's catalogue constitutes a written contract between the
educational institution and the patron, where entrance is had under its
terms); Taylor, 275 S.W. at 1090­1919; (holding that a special verbal
contract between a school and parent of student may exist in
derogation of the written terms of the catalogue, which constitutes a
written contract between the educational institution and the patron,
when entrance is had under its terms); Vidor, 145 S.W. 672(school
catalogue sets forth terms of contract between patrons and school). 
The First District Court in Houston has stated that "the relationship
between a private school and its student has by definition primarily a
contractual basis." Eiland, 764 S.W.2d at 837-38. And recently, the
San Antonio court stated that "[w]here a private college or university
impliedly agrees to provide educational opportunity and confer the
appropriate degree in consideration for a student's agreement to
successfully complete degree requirements, abide by university
guidelines, and pay tuition, a contract exists." Southwell, 974 S.W.2d
at 356.

 At a minimum, an implied contract existed between Villarreal and
The Art Institute that The Art Institute would provide Villarreal an
educational opportunity and confer upon her a degree in photography
in consideration for her agreement to successfully complete degree
requirement, abide by the school's guidelines, and pay tuition. The
other terms of the contract were partly oral and partly written. We
confine our inquiry here to whether Villarreal made out her causes of
action for breach of contract with regard to the specific terms she
alleges were breached in this suit.

 While a valid contract did exist between The Art Institute and
Villarreal, Villarreal failed to offer any evidence that the terms of that
contract required The Art Institute to perform the acts that she
complains it failed to perform. Thus, because she has not proven the
existence of a valid contract containing the terms upon which she bases
her suit, the trial court was correct in directing verdict against Villarreal
on her breach of contract claims.

 In order for the trial court to have erred in failing to send her
breach of contract claims to the jury, Villarreal must have presented
enough evidence to raise a fact issue on each element of her three
claims of breach. Her three claims are (1) that the Institute failed to
provide her with unlimited access to its facilities; (2) that the Institute
failed to provide her with an Associate's Degree; and (3) that the
Institute failed to provide her with college credit hours that were
transferable into a four-year degree program. With regard to each, she
must have produced evidence of: (1) the existence of a valid contract
binding the Institute to perform the promised act she claims it failed to
perform; (2) her performance or tender of performance given as
consideration for that particular promise; (3) nonperformance on the
part of the Institute; and (4) damages resulting from the breach. See
Garner v. Corpus Christi Nat. Bank, 944 S.W.2d 469, 476 (Tex.
App.--Corpus Christi 1997, writ denied) (reciting the essential elements
of a breach of contract action). Each of her claims fails to meet the first
element.

 The first element in a breach of contract case is that the plaintiff
must prove the existence of a valid contract wherein the defendant
promised to perform in the manner the plaintiff alleges he failed to
perform. The elements of a valid contract are: (1) an offer; (2) an
acceptance in strict compliance with the terms of the offer; (3) a
meeting of the minds; (4) each party's consent to the terms; and (5)
execution and delivery of the contract with the intent that it be mutual
and binding. Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex.
App.--San Antonio 1999, pet. denied); McCulley Fine Arts Gallery, Inc.
v. "X" Partners, 860 S.W.2d 473, 477 (Tex. App.--El Paso 1993, no writ). 
"The determination of a meeting of the minds, and thus offer and
acceptance, is based on the objective standard of what the parties said
and did, and not on their subjective state of mind." Copeland, 3 S.W.3d
at 604. Villarreal produced no evidence to show a valid contract existed
requiring The Art Institute to: (1) provide her with unlimited access to
its facilities, (2) confer an associate's degree upon her, or (3) provide her
with college credits that could be readily transferred to another
university or college. Because she has not shown the existence of a
valid contract containing those terms, her breach of contract claims
must fail as a matter of law. We address each alleged promise, in turn.

1. Promise to Provide Unlimited Access to the Institute's Facilities


 A. No evidence of a contract

 First, Villarreal failed to offer any evidence that The Art Institute
entered into a valid contract to provide her with unlimited access to its
facilities. She also failed to offer any evidence that The Art Institute
breached that agreement. The only evidence she offered was her own
testimony that she was told by an admissions representative that once
she received her degree, she would "always" be able to come back and
use their equipment. She also testified that one of the teachers at The
Art Institute told a story about a student that had gone to school there,
became a photographer and after graduating had some problems with
her personal equipment. She was able to get the job done by using The
Art Institute facilities. The implication, of course, was that all graduates
of the photography program would be able to return to the Institute to
use the facility if necessary.

 However, this evidence does not show that a valid contract
existed between Villarreal and the Institute requiring the Institute to
allow her unlimited use of its facilities. Villarreal does not contend that
the Institute made that promise to her in writing, but only alleges that
the oral statements referred to above constitute the binding contract
upon which she sues. She did not offer any evidence that the Art
Institute intended to be bound by that condition, or that unlimited
access to the facility was provided as consideration for her tuition and
fees. She did not offer any evidence that there were any conditions on
The Art Institute's alleged promise to provide her with unlimited use of
its facility. She appears to be arguing that The Art Institute promised
her unlimited use, regardless of her academic or enrollment status, and
regardless of whether she completed or dropped out of the photography
program. Her vague testimony the she was promised she would
"always" be able to use the facility does not logically imply that The Art
Institute intended to enter a binding contract to allow such use, and we
find it insufficient to establish that a valid contract existed that
contained that term.

 B. No evidence of a breach

 Moreover, Villarreal offered only vague and scant evidence that
any such promise was, in fact, breached by The Art Institute. She
testified that at a time when she was not enrolled in classes, she went
to the school to use the facility and equipment and was told by another
student that Jim Estes, the head of the photography department, had
said to tell her the next time she came to the school that she was not
to use the facility and equipment anymore. Villarreal testified that upon
hearing that, she left, and never inquired further about her ability to use
the facility or equipment nor did anything to confirm that the message
was legitimate. The head of the department testified that he never told
anyone to relay that message to Villarreal.

 "Some evidence" is that which would enable reasonable and
fair-minded people to differ in their conclusions, but creates more than
a suspicion or surmise. Ramirez v. Carreras, 10 S.W.3d 757, 760 (Tex.
App.--Corpus Christi 2000, pet. filed Feb. 23, 2000). We hold that
Villarreal did not present any evidence that The Art Institute made and
then breached a contract to allow her unlimited use of its facility, and
affirm the trial court's granting directed verdict on that basis.

2. Promise to Confer an Associate's Degree

 Similarly, Villarreal failed to support her claim that The Art Institute
promised to provide her with an Associate's Degree, rather than an
Associate's Degree of Applied Science/Art. (The difference in the two
is that an Associate's Degree is typically comprised of credits that will
transfer into a four-year degree program at a college or university,
whereas an "applied" degree is comprised of credits in a specialty area
that will typically not count toward another degree.) The Art Institute's
representatives testified at length regarding the differences in an
"Associate's Degree of Applied Sciences" (or Art) and an "Associate's
Degree," and testified that the applied degree was the only one offered
for photography at the Institute.

 Villarreal's own testimony failed to establish that The Art Institute
contracted to provide her with an Associate's Degree. She testified that
she was given the impression that she would be earning an Associate's
Degree from The Art Institute, but not that she was specifically told
that. She testified that during her initial interview with The Art Institute
admissions representative, she told the representative that she planned
to go to college, and the representative responded that she would be
attending college at The Art Institute, the only difference was that she
could complete an associate's degree in two years at The Art Institute
versus four years otherwise. She testified that at the time she signed
the Enrollment Agreement, she did not know that the "Associate of
Applied Science/Art" degree offered by The Art Institute was different
from an associate's degree. She was told that after she got her
photography degree, she could continue her schooling and get a
"master's degree."

 However, this claim is in express contradiction of a written
agreement between the parties. Villarreal executed a form promulgated
by the Texas Education Agency when she enrolled at The Art Institute. 
This form ensures that the students receive the information the school
is required by law to provide prior to enrollment. It is to be completed
by the student prior to enrollment and the completed form maintained
by the school in each student's file. This document is initialed fourteen
(14) times by Villarreal, and signed and dated by her at the bottom.

 It states, in relevant part:

 If the school awards credit hours, it has been explained to
me that transferability of any credit hours earned at this
school may be limited. I have also been provided a list of all
known Texas institutions of higher learning and state
technical institutions that will accept any or all of the credit
hours so earned. If the school has an articulation agreement
with an academic college or university, that information has
been provided with any limitations. . . .


Villarreal testified that at the time she signed the Enrollment Agreement,
she did not know that the "Associate of Applied Science/Art" degree
offered by The Art Institute was different from an Associate's degree. 
She said she was not told that her credit hours at The Art Institute
would not transfer to other colleges. She testified that her whole goal
was to continue her education beyond the photography course, and if
she had known that the hours would not transfer, she would not have
taken it.

 However, Villarreal did not testify that anyone directly told her that
she would receive an Associate's Degree, and not an Associate's of
Applied Sciences Degree. She did not point to any document wherein
The Art Institute promised her an Associate's Degree as opposed to an
Associate's of Applied Sciences Degree. In fact, the documentary
evidence implies the opposite.

 We do not believe this amounts to any evidence that The Art
Institute entered into a contract to provide Villarreal with an Associate's
Degree. We hold that all this evidence, taken as a whole, does not
create a fact question regarding whether a valid contracted existed
containing this term. At best, it shows that Villarreal was mistaken in
her assumptions when enrolling in the school, and that The Art Institute
did not take steps to ensure that she did not make that mistake. We
find the trial court was correct in directing verdict on the breach of
contract claim insofar as it relates to the breach of a promise to provide
Villarreal with an Associate's degree.

3. Promise to Provide her with Transferrable Credits

 Finally, we believe the same principles apply to Villarreal's claim
that The Art Institute contracted to provide her with college hours that
would be transferrable to another college or university. This alleged
promise is in direct contradiction with the language on the Texas
Education Agency form referred to previously. Her only testimony that
could be construed to evidence of a contract to provide her with
transferrable credits was that she was told by an admissions
representative that she would be going to college at the Institute, but
it would only take two years for a degree rather than four years. We
hold this evidence is insufficient to raise a fact issue regarding whether
The Art Institute entered into a valid contract to provide her with
transferrable college credits. We affirm the trial court's grant of directed
verdict on all breach of contract claims.

Legal and Factual Sufficiency: Fraud Claims



 Villarreal also complains that the trial court erred in entering a
take-nothing judgment based on the jury's verdict because the evidence
was legally and factually insufficient to support the jury's answer to
issue number one. Issue number one read:

 Did the Art Institute of Houston commit fraud against Daniza
S. Villarreal?


 You are instructed that fraud occurs when:


 (a) a party makes a material misrepresentation,


 (b) The misrepresentation is made with knowledge of its
falsity or made recklessly without any knowledge of the truth
and as a positive assertion,


 (c) The misrepresentation is made with the intention that it
should be acted on by the other party, and


 (d) The other party acts in reliance on the misrepresentation
and thereby suffers injury.



 You are instructed that "misrepresentation" means:


 a false statement of fact, or


 a promise of future performance made with an
intent not to perform as promised, or


 a statement of opinion based on a false statement
of fact, or


 a statement of opinion that the maker knows to
be false


The jury answered, "No." We do not find their answer to be
unsupported by the evidence.

 In considering a "no evidence," "insufficient evidence" or "against
the great weight and preponderance of the evidence" point of error, we
follow the well-established test set forth in Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986); see also Calvert, No Evidence and
Insufficient Evidence Points of Error, 38 Tex. L. Rev. 361 (1960). In
determining a "no evidence" point, we consider only the evidence and
inferences which tend to support the finding and disregard all evidence
and inferences to the contrary. Larson v. Cook Consultants, Inc., 690
S.W.2d 567, 568 (Tex. 1985); International Armament Corp. v. King,
686 S.W.2d 595, 597 (Tex. 1985); In re King's Estate, 150 Tex. 662,
244 S.W.2d 660, 661-62 (1951). If any evidence of probative force
exists to support the finding, we must overrule the point and uphold the
finding. In re King's Estate, 244 S.W.2d at 661-62.

 In reviewing a factual sufficiency point, we must weigh all of the
evidence in the record. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996); Burnett v. Motyka, 610 S.W.2d 735, 736 (Tex. 1980). A court
may overturn findings only if they are so against the great weight and
preponderance of the evidence that they are clearly wrong and unjust. 
Ortiz, 917 S.W.2d at 772; Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986). In Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986), the
court said that a court of appeals must also "clearly state why the jury's
finding is factually insufficient or is so against the great weight and
preponderance as to be manifestly unjust." Pool, 715 S.W.2d at 635.

 After careful review of the record, we find the evidence supports
the jury's findings. Plaintiff's fraud case focused on the exact same
conduct complained of in the breach of contract action. The only
evidence that Villarreal presented supporting her fraud claims was her
own, clearly interested, testimony. Even at that, she arguably did not
provide any evidence that The Art Institute authorized any
misstatements, or that the statements were made intentionally and
with the intent that she rely on them. The Art Institute offered the
testimony of its president, an admissions director, and a professor. All
appeared to be credible, and all denied Villarreal's charges. The jury
was free to believe The Art Institute's testimony and disbelieve
Villarreal's. We do not find that its answer to issue one was against the
great weight and preponderance of the evidence, and certainly find that
it was supported by legally sufficient evidence. Accordingly, we affirm
the judgment of the trial court insofar as it relates to the fraud claims.


 We affirm the judgment of the trial court in all respects.





 ______________________________

 J. BONNER DORSEY,

 Justice


Do not publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 11th day of May, 2000.