**Frederick SPENCER, Plaintiff,**

v.

**Thomas RAU, Individually and in his Official Capacity; and Michael Muniz, Individually and in his Official Capacity, Defendants.**

No. SA–06–CA–760–RF.

United States District Court,
W.D. Texas,
San Antonio Division.

Oct. 11, 2007.

Christopher J. Gale, Gale, Wilson, & Sanchez P.L.L.C., San Antonio, TX, for Plaintiff.

Shawn K. Fitzpatrick, Fitzpatrick & Kosanovich, P.C., San Antonio, TX, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ROYAL FURGESON, District Judge.

BEFORE THE COURT is Defendant Police Officer Michael Muniz ("Officer Muniz") and Defendant Police Officer Thomas Rau's ("Officer Rau") (collectively, "Officers") Motion for Summary Judgment (Docket No. 29), filed July 23, 2007 (which, incorporates the Officers' Motions for Summary Judgment pursuant to local rule CV–12 (Docket Nos. 6 and 7), filed November 15, 2006); Plaintiff's Response thereto (Docket No. 40); and the Reply, filed by the Officers. After careful consideration, the Court is of the opinion that the Officers' Motion for Summary Judgment (Docket No. 29) should be GRANTED.

### Summary

This case arises from an unfortunate turn of events involving three well-intentioned public servants who stopped on the

middle of the highway late at night to render aid to strangers. Plaintiff is retired from the military and a registered nurse and Defendants are two San Antonio police officers. All were headed home at 2:30 a.m. after their respective shifts when they came upon a car accident. Although Plaintiff stopped on the highway as a Good Samaritan, an argument with the Officers ensued. Unfortunately, the situation quickly spiraled out of control as tempers heated and the parties found themselves in a situation that likely would not have occurred under normal circumstances.

After refusing to leave the scene of the accident and shoving and breaking free from the Officers' attempt to make an arrest, Plaintiff was arrested for interfering with the duties of a police officer. Plaintiff then sued the Officers, alleging federal and state law claims. The Officers have moved for summary judgment based on qualified and official immunity. The events that transpired—while unfortunate—do not give rise to constitutional or state law violations. Under the circumstances, the Officers' conduct was not objectively unreasonable. Therefore, the Officers are entitled to qualified and official immunity and their Motion for Summary Judgment should be granted.

### Factual and Procedural Background

*Factual Summary*

Taking all facts alleged in the light most favorable to Plaintiff, the events of the morning of September 20, 2005 occurred as follows. After leaving work as a registered nurse, Plaintiff came upon the scene of a one-car accident while traveling down IH–35 at 2:30 a.m. *Pl.'s Original Compl.* at 3. Plaintiff noticed the vehicle had struck a concrete barrier in the middle of the highway and was now disabled in the far left lane. *Id.* Plaintiff observed several individuals standing outside of the disabled vehicle, parked his vehicle on the right side of the road, and crossed the interstate

to see if any of the individuals needed medical assistance. *Pl.'s Response to Def.'s Mot. for Summ. J.* at 4. After determining the individuals were conscious and able to answer his questions, Plaintiff ushered the individuals out of the lanes of traffic so they would be safe. *Id.* Plaintiff returned to his vehicle parked across the Interstate to retrieve his cell phone to call 911 and inform emergency services of the accident. *Id.* The individuals involved in the one-car accident did not have serious or life-threatening injuries. *Def.'s Mot. for Summ. J.* at 3.

Before Plaintiff finished dialing 911, the Officers arrived on the scene and positioned their police cruiser directly behind the disabled vehicle in the left lane. *Pl.'s Response to Def.'s Mot. for Summ. J.*, at 4. The interstate was lit but still dark. *Def.'s Mot. for Summ. J.*, Muniz Aff. at 1. Because the interstate's shoulder between the left lane and traffic barrier is narrow, the patrol car remained in the left traveling lane. *Id.* The Officers turned their patrol car emergency lights on. *Id.* The Officers are trained to secure the safety of an accident scene before proceeding with an investigation and/or reporting the incident. *Def.'s Mot. for Summ. J.* at 3; Muniz Aff. at 1.

Although Plaintiff knew the individuals did not have serious injuries Plaintiff wanted to speak with the Officers to inform them of the situation. *Id.* However, before Plaintiff could make his attempt to cross the interstate, Officer Muniz "rudely demanded that Plaintiff return to his truck." *Id.* Upon exiting the vehicle Officer Rau went to the rear of the patrol car to obtain flares to close the left lanes of traffic. *Id.* Meanwhile, from across the interstate, the Officers ordered Plaintiff to stay in his truck and out of the roadway. *Def.'s Mot. for Summ. J.* at 4. However, Plaintiff believed he had a responsibility as a regis-

tered nurse. *Id.* Therefore, he crossed the interstate to further attend to the accident victims and relay information to the Officers in order to allow the Officers to better assess the situation and determine what action should be taken. *Id.* at 4–5.

After crossing the interstate, Plaintiff approached the Officers and identified himself as a nurse. *Pl.'s Original Compl.* at 3. Plaintiff asked the Officers for "their names and badge numbers and informed [them] that he did not appreciate the way they spoke to him...." *Pl.'s Response to Def.'s Mot. for Summ. J.* at 5. Officer Muniz provided the information and again told Plaintiff to get out of the road. *Def.'s Mot. for Summ. J.* at 4. Then, according to Plaintiff, "Officer Muniz began to lecture [him] about how unsafe it was for him to be crossing the highway." *Id.* Plaintiff was "flabbergasted by this statement" as Plaintiff felt he took "every precaution necessary to protect himself from the danger of crossing the highway...." *Pl.'s Original Compl.* at 3. Plaintiff informed Officer Muniz he was capable of assessing the danger of being in the roadway himself. *Def.'s Mot. for Summ. J.* at 4; Docket No. 32, Ex. 1, 3. Specifically, while in the roadway with Officer Muniz, Plaintiff stated:

> I am almost 51 years old with 21 years active duty prior to retiring, 13 years as a nurse with a portion of that in emergency medicine. I even did two years working as a volunteer on our neighborhood volunteer fire department. I am sure I understand safety and know how to keep myself safe.

*Pl.'s Response,* Ex. 3 at 1.

As Plaintiff was talking with Officer Muniz about safety, Officer Rau began to yell at the Plaintiff that Plaintiff needed to return to his vehicle. *Def.'s Mot. for Summ. J.* at 4. Officer Muniz was attempting to get out of the roadway. *Id.* Plaintiff yelled back and stated "I will when I'm ready after I finish speaking with your partner." *Pl.'s Response to Def.'s Mot. for Summ. J.,* Ex. 3 at 2. Without warning, Officer Rau "lunged at Plaintiff and grabbed his left arm". *Id.* at 5. "As a reflex, Plaintiff broke free of [Officer] Rau's grip ... shove[d] him away," and pulled his arm away. *Id.,* Ex. 3 at 1; *Pl.'s Original Compl.* at 4. Officer Muniz pulled Officer Rau and Plaintiff away from the middle lane of traffic as they struggled. *Def.'s Mot. for Summ. J.* at 5. After Plaintiff broke free, Officer Rau again lunged at Plaintiff and grabbed Plaintiff's right arm. *Pl.'s Response to Def.'s Mot. for Summ. J.* at 5. This time Plaintiff did not resist as Officer Rau applied an arm bar technique, placed Plaintiff's arms behind his back, cuffed him, and placed Plaintiff under arrest for interfering with the duties of a public servant. *Id.*

Immediately after Plaintiff was cuffed, the Officers stopped using force. *Def.'s Mot. for Summ. J.* at 5. The Officers placed Plaintiff inside the patrol car and arrested him. Ten days later on September 30, 2005, the charges were dismissed. *Pl.'s Resp. to Def.'s Mot. for Summ. J.* at 5. Plaintiff asserts that as a result of the Officers' actions, he sustained soft tissue injuries. *Id.*

*Procedural Summary*

Plaintiff files this suit pursuant to 42 U.S.C. § 1983 and the laws of the state of Texas. Specifically, Plaintiff alleges the following causes of action under 42 U.S.C. § 1983:(1) the Officers falsely arrested and imprisoned Plaintiff such that his arrest violated the Fourth Amendment; (2) the Officers used excessive force against him in violation of the Fourth Amendment; (3) the Officers failed to intervene to stop the application of excessive force; and (4) the Officers maliciously prosecuted Plaintiff. In addition, Plaintiff makes the following claims under the laws of the state of Tex-

as: (1) false arrest and imprisonment; (2) assault and battery; (3) intentional infliction of emotional distress; and (4) malicious prosecution. *Plaintiff's Original Compl.* at 5–12. Plaintiff seeks an unspecified amount of monetary damages. *Pl.'s Original Compl.* at 13.

The Officers timely filed their Motions to Dismiss or in the Alternative for Summary Judgment (Docket Nos. 6 and 7) to preserve their defense of qualified immunity in accordance with the Local Rules of the Western District of Texas.[1] *See* Local Rule CV–12. In their respective motions the Officers argue they are entitled to summary judgment on the § 1983 claims because they have qualified immunity. The Officers submit that there is no evidence Plaintiff's constitutional rights were violated. *Officers Muniz and Rau Mot. for Summ. J. Pursuant to Local Rules* at 2.

Additionally, the Officers contend all claims against them in their official capacity are redundant and should be dismissed because the same claims were brought against their employer the City of San Antonio. *Id.* at 6. Plaintiff contends the official capacity claims are proper and should not be dismissed for redundancy, and that summary judgment is not proper for various reasons—including the need for more discovery. *Pl.'s Response to Def's Mot. for Summ. J. Pursuant to Local Rules* at 18.

Subsequently, the Officers filed a Summary Judgment Motion currently before the Court pertaining to all federal and state law claims. This Motion (Docket No. 29) incorporates the previous two Motions (Docket Nos. 6 and 7) by the Officers.

Plaintiff makes the same claims as above and also disputes that the Officers are entitled to qualified immunity. Also, Plaintiff objects to a portion of Officer Muniz's affidavit in that it draws improper conclusory legal opinions that go to the ultimate fact issue.[2]

### Analysis

*Standard of Review*

### Summary Judgment Standard

Summary judgment is appropriate if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996); *Int'l Shortstop Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991). In the. summary judgment process, both movants and non-movants bear burdens of proof, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322, 106 S.Ct. 2548. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the nonmovant's claims or affirmative defenses. *Id.*

At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses." *Id.* at 324, 106 S.Ct. 2548. The non-moving party must produce "specific facts" showing a genuine issue for trial and not

---

1. Because Docket Nos. 6 and 7 are incorporated into the Summary Judgment Motion currently before the Court, Docket Nos. 6 and 7 have been denied as moot.

2. Specifically, Plaintiff objected to Officer Muniz' affidavit (Docket No. 29–3 at 2) re-

garding comments about Officer Muniz' good faith. Plaintiff objected these comments draw improper legal opinions that are fact issues. The Court did not consider Officer Muniz' good faith comments in arriving at its decision to grant the summary judgment motion.

mere general allegations. Fed.R.Civ.P. 56(e); *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995). It is important to note that "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. Thus, the Court construes all facts and inferences in the light most favorable to the non-moving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir.1996).

The Fifth Circuit has concluded "[t]he .standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir.1990) (citing *Matsushita Electrical Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir.1994).

**Qualified Immunity**

The Officers assert they are entitled to qualified immunity. Public officials acting within the scope of their official duties are shielded from civil liability by the doctrine of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In order to establish the defendant is not entitled to qualified immunity, a plaintiff must satisfy a two-part test: (1) under existing law, the plaintiff must allege a violation of an actual, clearly established constitutional or federal statutory right; and (2) if so, the defendant's conduct must be objectively unreasonable in light of clearly established law at the time of that conduct. *Felton v. Polles*, 315 F.3d 470, 473 (5th Cir.2002); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir.1998).

Qualified immunity shields a government official from civil liability for damages based on discretionary functions if the official's acts were objectively reasonable in light of clearly established law. *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir.2001). Therefore, where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff must "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir.1997). Courts in the Fifth Circuit do "not require that an official demonstrate that he did not violate clearly established federal rights. *Id.* Instead, our precedent places that burden upon plaintiffs." *Id.*

The second prong "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which it took place." *Id.* at 872. A defendant's acts are objectively reasonable unless all reasonable officials in the defendant's circumstances would have known the defendant's conduct violated the Constitution or a federal statute as alleged by the plaintiff. *Thompson*, 245 F.3d at 457. With these principles in mind, the Court will address the issue of the Officers' qualified immunity.

In its discussion of Plaintiff's arguments below, the Court considers Plaintiff's fed-

eral and the corresponding state law claims where appropriate. Specifically, the Court addresses Plaintiff's claims regarding false arrest, excessive force, assault, failure to intervene, and malicious prosecution. Finally, the Court addresses the official capacity claims and the Officer's entitlement to official immunity.

## A. False Arrest

Plaintiff claims his arrest and detention violated his Fourth Amendment rights and rights under the laws of the state of Texas. For the complained violations to have occurred, the Officers must have lacked probable cause. Accordingly, if probable cause exists, there is no violation. The Court finds the Officers had probable cause to make the arrest; therefore, there was no violation.

The Fourth Amendment guarantees the "right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. Simply, the Fourth Amendment does not prohibit all searches and seizures—only those that are "unreasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 183, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001) (explaining people enjoy the constitutional right to be free from false arrest without probable cause); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir.2001) (noting the same).

■ The Fifth Circuit has held that probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001) (quoting *Spiller v. Tex. City*, 130 F.3d 162, 165 (5th Cir.1997)). To establish probable cause, a reasonable person standard is used. *Id.* The existence of probable cause for an arrest is a bar to a § 1983 claim for unlawful arrest and false imprisonment. *Pfannstiel v. Marion*, 918 F.2d 1178, 1183 (5th Cir.1990). Therefore, the existence of probable cause in the instant case bars Plaintiff's § 1983 claim.

■ Likewise, the state law claims have the same requisite.[3] In Texas, probable cause defeats causes of action for false arrest and imprisonment. *Lang v. City of Nacogdoches*, 942 S.W.2d 752, 764 (Tex. App.-Tyler 1997, writ denied) (stating "in false arrest cases, the question of good faith turns on whether the officer had probable cause to make the arrest."); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997) (discussing malicious prosecution).[4] When making a claim of false imprisonment a complainant is actually making a complaint in regard to the false arrest. *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 753–754 (Tex.App.-Corpus Christi, 1998). The justness of the imprisonment is dependent on whether the officers had probable cause to make an arrest. *Id.* (citing *Whirl v. Kern*, 407 F.2d 781, 790 (5th Cir.1968)) (stating false arrest is tantamount to effecting a false imprisonment).

---

**3.** The Officers assert they are entitled to official immunity in regard to the state law claims. The Court provides a separate section that includes a detailed discussion of the official immunity standard. However, the Court incorporates the applicable state law claims into its discussion of the federal law claims where appropriate.

**4.** Under Texas law, the existence of probable cause also defeats a claim for malicious prosecution. *See Richey*, 952 S.W.2d at 517. The elements of a Texas malicious prosecution claim are discussed in section D below.

■ In the present case, the Officers had probable cause to make an arrest. Specifically, they had probable cause to arrest Plaintiff for interfering with the duties of a police officer. The Texas Penal Code makes it a misdemeanor if a person "interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law. . . ." Tex. Penal Code Ann. § 38.15(a)(1) (Vernon 2007).

In the instant case, Plaintiff's continued presence at the accident scene after being ordered to leave, along with the defiant verbal and physical exchange, created probable cause to justify the arrest. The Officers are trained to secure an accident scene and were performing their duty by securing, investigating, and reporting the accident. *Def.'s Mot. Summ. J. at 12; Muniz Aff.* at 1. They were exercising their discretion when they concluded they needed to remove all bystanders from the darkened interstate to secure the scene. Plaintiff acknowledges that in asking him to leave the Officers told him "it was [their] job to control the scene and make sure all were safe." *Pl.'s Response to Def's Motion,* Ex. 3 at 1.

Although Plaintiff may have been well-intentioned, it is undisputed that the Officers asked and even ordered Plaintiff to get back in his vehicle, stay on the opposite side of the highway, and remove himself from the scene of the accident. Plaintiff acknowledges that against the Officers' orders he did not get back in his truck, he

crossed the interstate, and after being ordered to leave "at least three times," he yelled back, "I will when I'm ready. . . ." *Id.,* Ex. 3 at 3. It is undisputed that Plaintiff did not comply with the Officers' orders. Thus, Plaintiff's actions violated Texas law and gave the Officers probable cause to effect an arrest.

Based on Plaintiff's actions and inaction, a reasonable person could conclude Plaintiff was interrupting, disrupting, impeding, or otherwise interfering with the Officers' duties and therefore, was committing an offense.[5]

■ Furthermore, the Officers established in their briefing and at the hearing numerous other offenses Plaintiff violated for which probable cause existed, and therefore an arrest was validated.[6] An uncharged offense does not have to be related to or based on the same conduct as the offense identified by the arresting officer. *Greenlee v. Allred,* 126 Fed.Appx. 656, 657 (5th Cir.2005). There is not a Fourth Amendment violation "if the arresting officer has probable cause to arrest [an individual] for any crime, regardless of whether the [individual] can lawfully be arrested for the crime for which the officer states or believes he is making the arrest." *United States v. Bain,* 135 Fed.Appx. 695, 697 (5th Cir.2005) (citing *Devenpeck v. Alford,* 543 U.S. 146, 150, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)).

■ Moreover, it is irrelevant to the justification of an arrest that the charges

---

5. Although § 38.15(d) of the Texas Penal Code makes it an affirmative defense to prosecution that the interference with public duties constituted only speech—this defense does not negate the existence of probable cause, which is at issue here. Furthermore, Plaintiff's physical disobedience—and not just his speech—constituted a disruption for law enforcement.

6. *See Def's Mot. for Summ. J.* at 14–16 (pointing out that it is an offense not to follow a police officer's orders to move from a roadway so as to maintain safety; Tex. Penal Code Ann. § 42.03 (Vernon 2007); San Antonio City Code § 19–24; resisting arrest according to Tex. Penal Code Ann. § 38.03(a) (Vernon 2007); failing to comply with police orders according to San Antonio City Code § 19–24, 1–5).

were later dropped by a criminal court. Instead, when reviewing the issue of probable cause the court determines the "reasonableness of the actions taken in light of the cause that existed *at the time of arrest.*" *Mendenhall v. Riser,* 213 F.3d 226, 231 (5th Cir.2000) (emphasis in original) (citing *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). It is the totality of the circumstances that matters. *Mendenhall,* 213 F.3d at 231. Practical common sense is used to determine whether a reasonable officer could have believed there was a fair probability that the person arrested committed the crime. *Id.*

In sum, under the totality of the circumstances and the prescribed reasonableness test it is clear the Officers had probable cause to believe Plaintiff was committing or had committed an offense. Therefore, Plaintiff has not established any constitutional violation based on his claim of false arrest. Consequently, under both state and federal law, a false arrest or false imprisonment did not occur. The Officers are entitled to summary judgment on this claim.

## B. Excessive Force

Plaintiff asserts the Officers used excessive force in violation of his Fourth Amendment rights. Additionally, Plaintiff claims the Officers violated Texas law by committing assault and battery. Although Plaintiff claims he sustained an injury, the Court finds the use of force in arresting Plaintiff was not excessive or objectively unreasonable. Considering Plaintiff's admitted resistence it is apparent a reasonable officer in the same situation could have determined the very same extent of force was necessary.

■ A claim of excessive force used in the course of an arrest is analyzed under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "To succeed on an excessive force claim [under 42 § 1983], a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force was objectively unreasonable." *Glenn,* 242 F.3d at 314 (internal quotation marks omitted). The injury suffered must be more than *de minimis* and must be evaluated in the context in which the force was deployed. *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir.1999). When analyzing the objective reasonableness of the force used the Court "must balance the amount of force used against the need for force." *Ikerd v. Blair,* 101 F.3d 430 434 (5th Cir.1996). The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments ... about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. This context-based evaluation is subjective and defined entirely by the context in which the injury arises. *Gutierrez v. City of San Antonio,* 139 F.3d 441, 447 (5th Cir.1998). This determination requires careful attention to the facts of each particular case including whether the suspect actively resisted arrest. *Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

■ Similarly, under Texas law, a police officer is not liable for assault if he only used force reasonably necessary to effectuate the arrest. *Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 579 (Tex.2001). Furthermore, under the Texas Penal Code, "a police officer is privileged to use force to the degree he reasonably believes is necessary to make an arrest." *Id.*

 However, an officer may not use force greater than reasonably necessary to complete the arrest. *Petta,* 44 S.W.3d at 579. This is a reasonably prudent officer standard. *Telthorster v. Tennell,* 92 S.W.3d 457, 465 (Tex.2002). In certain circumstances when an officer uses more force than necessary a plaintiff may be justified to resist arrest. However, this is not one of those situations. Officer Rau's grabbing Plaintiff's arm in an attempt to make an arrest did not create a heightened use of force—nor justify Plaintiff's breaking free or shoving away the uniformed officer.[7] A suspect may not presume the use of force will be excessive. *Petta,* 44 S.W.3d at 579.

 Plaintiff asserts the Officers used excessive and/or deadly force by unlawfully assaulting him and beating him. *Pl.'s Original Compl.* at 6. Specifically, Plaintiff identifies the excessive force to have occurred when Officer Rau used an-arm bar technique to place him in handcuffs. *Id.* at 4. Plaintiff contends that no reasonable officer would have used such a brutal and life threatening attack on any person. *Id.* As a result of the excessive force Plaintiff contends he sustained soft-tissue damage. *Pl.'s Response to Def's Mot. for Summ. J. pursuant to Local Rules* at 5, Ex. 3.

According to the Officers they used only the force necessary to bring Plaintiff's wrists behind his back to successfully handcuff him. *Def.'s Mot. for Summ. J.* at 7. The Officers contend any greater force

they may have used was justified as reasonable especially in light of Plaintiff's resistence. *Id.* Furthermore, they ceased to use all force once Plaintiff was successfully handcuffed. *Id.* at 8.

Even though Plaintiff contends he suffered an injury, there is no indication it was serious enough to justify a finding of excessive force.[8] *See, e.g., Brown v. Long Beach Police Dept.,* 105 Fed.Appx. 549, 550 (5th Cir.2004) (denying qualified immunity in excessive force case when the arrested suspect's pelvis was broken). Nevertheless, even assuming without deciding Plaintiff suffered an in injury (that was more than *de minimis*) the Court concludes the use of force was not clearly excessive or objectively unreasonable.

Although the severity of Plaintiff's crime was minimal his immediate threat to the Officer's safety and the safety of the accident scene is uncertain. Both parties agree the incident took place in a traffic lane on the Interstate Highway. Both agree Plaintiff disobeyed the Officers' orders and requests to leave, and that Plaintiff shoved Officer Rau and broke free of his grip. *Pl.'s Response to Def's Mot. for Summ. J.,* Ex. 3 at 1; *Pl.'s Original Compl.* at 4. The need for force to control the situation weighs strongly against Plaintiff.

Furthermore, the use of force immediately ceased once Plaintiff was handcuffed. The Court concludes the Officers were jus-

---

**7.** *See Also Bruno v. State,* 922 S.W.2d 292, 294 (Tex.App.-Amarillo 1996, no pet.)(stating that from the moment an officer *begins* his efforts to gain control or physical restraint over an individual, the officer can be considered "effecting an arrest"). Further, it is not necessary for the officer to verbalize his intent to arrest. *Id.*

**8.** Plaintiff has labeled his injury as soft tissue damage and at other times ligament trauma— offering to provide a medical report from an

outpatient clinic if needed. *Pl.'s Response to Def.'s Mot. for Summ. J.,* Exh. 3 at 2; *Pl's Response to Def's Mot. for Summ. pursuant to Local Rules,* at 5. Plaintiff filed his Complaint over a year ago and has filed numerous pages of documents and supporting exhibits. However, the extent Plaintiff contends he suffered an injury does not go beyond his claims of having suffered a "soft tissue injury" or "ligament trauma." Plaintiff never elaborates as to whether he suffered a soft tissue injury amounting to more than a strain or a sprain.

tified in making a split-second on-scene evaluation of the necessary amount of force. Accordingly, the use of force exerted to arrest Plaintiff did not amount to a constitutional violation. The Officers are entitled to summary judgment on this claim. Similarly, Plaintiff's assault and battery claim fails under Texas law.

## C. Failure to Intervene

The Officers did not fail to intervene to stop the use of excessive force because there was no use of excessive force. Both officers were involved with controlling Plaintiff's resistence and placing him under arrest. Therefore the opportunity to intervene did not exist.

Plaintiff's claim regarding failure to intervene is unclear. *Pl.'s Original Compl.* at 6. It appears Plaintiff is alleging each Officer had a reasonable opportunity to realize the amount of force each other was using on Plaintiff and failed to intervene to stop the force. *Pl.'s Response to Def.'s Mot. for Summ. J.* at 14. The Fifth Circuit held "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley,* 19 F.3d 1068, 1075 (5th Cir.1994).

 The Fifth Circuit has not enunciated the elements of a § 1983 failure to intervene claim. For guidance, we can look to the First Circuit which has clarified the elements of a failure to intervene claim. The First Circuit has held that a defendant can be liable under § 1983 for failing to intervene if the defendant was present when the force was used, observed the use of excessive force, was in a position where he could realistically prevent the force, and had sufficient time to prevent it. *Davis v. Rennie,* 264 F.3d 86, 97–98 (1st Cir.2001).

 Whether adhering to the elements proffered by the First Circuit (or reading the Fifth Circuit's statement about protecting a suspect from excessive force literally), the Officers did not fail to intervene. Both the Fifth and First Circuit make the presence of excessive force essential to a failure to intervene § 1983 violation. As previously discussed neither Officers used excessive force when arresting Plaintiff. Moreover, it does not appear from the facts of the case that either Officer could have taken any additional measures to protect Plaintiff from the use of force. For the foregoing reasons Plaintiff's § 1983 failure to intervene claim fails.

## D. Malicious Prosecution

 Plaintiff alleges the Officers maliciously prosecuted him by giving false information to the prosecutor that led the prosecutor to believe there was probable cause. *Pl.'s Original Compl.* at 10. Assuming the alleged facts are true, malicious prosecution standing alone does not state a constitutional violation. *Castellano v. Fragozo,* 352 F.3d 939, 945 (5th Cir. 2003) ("Causing charges to be filed without probable cause will not without more violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim."). Although Plaintiff has filed multiple constitutional claims in addition to his malicious prosecution claim, the Court has not found any constitutional violations.

Additionally, the Court has already noted that probable cause existed for Plaintiff's arrest despite the fact that the charges were later dropped. The Fifth Circuit has held that a malicious prosecution occurs when criminal proceedings are initiated "against an innocent person, for an improper purpose and without probable cause...." *Id.* at 946. For the foregoing reasons Plaintiff's federal civil rights claim under § 1983 based on malicious prosecution fails.

██ Plaintiff has stated no constitutional violation arising out of the conduct of Officer Muniz or Officer Rau. Therefore, the Officers are entitled to qualified immunity with regard to the federal malicious prosecution claims.

██ Under Texas law, to prove a malicious prosecution claim a plaintiff must prove (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initial or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff. *Richey,* 952 S.W.2d at 517. As previously mentioned the existence of probable cause in this case defeats Plaintiffs state law claim of malicious prosecution.

### Official Immunity

Plaintiff sued the Officers for false arrest, intentional infliction of emotional distress, assault and battery, and malicious prosecution under the laws of the state of Texas. The Officers claim official immunity as an affirmative defense to these state law claims. The Court finds the Officers are entitled to official immunity on all state law claims.

██ "Official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties." *Padilla v. Mason,* 169 S.W.3d 493, 504 (Tex. App–El Paso 2005, n.p.h.) (citing *Telthorster,* 92 S.W.3d at 460–61). This policy protects public officials from having to defend their decisions that were reasonable when they were made, however, to which hindsight casts a negative light. *Id.* at 463. "A governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the

employee's authority, (3) provided that the employee acts in good faith." *Id.* at 461. A governmental employee must establish all three of these elements to obtain summary judgment on the basis of official immunity. *Id.*

██ Official immunity is especially appropriate and necessary in police work where officers have to make split second decisions. *Padilla v. Mason,* 169 S.W.3d 493, 504–05 (Tex.App.-El Paso 2005) (citing *Telthorster,* 92 S.W.3d at 461). An officer's decision to make an arrest is discretionary. *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653–54 (Tex.1994) (stating police officers are exercising discretion when performing their duties).

██ It is important to note that when an officer makes an arrest that results in an injury to the suspect, "a particularized need/risk assessment is not compelled in the light of official immunity's overriding purpose" *Id.* at 505. However, an officer must still prove good faith but without the need/risk assessment. *Id.* To satisfy the good faith element the defendant officer must show that "a reasonably prudent officer, under the same or similar circumstances, could have believed that his or her conduct was justified based on the information possessed when the conduct occurred". *Id.* (citing *Telthorster,* 92 S.W.3d at 465). This standard only requires that a reasonably prudent officer *might* have reached the same decision under similar circumstances. *Id.* Further, a defendant's negligence does not defeat good faith because the test does not ask what a reasonable person would have done; instead it asks what a reasonable officer could have believed. *Id.*

Once an officer meets this burden, the plaintiff must show that no reasonable officer in this particular position could have

believed the facts justified the conduct. *Id.* It is not enough to show that a reasonably prudent officer could have reached a different conclusion. *Id.* If it is determined that officers of reasonable competence could disagree on this issue—it is held that the officer acted in good faith as a matter of law. *Id.*

 It has not been established that the circumstances that unfolded on the morning of September 20, 2005, were such that no reasonable officer could have believed the Officers' conduct was justified. In the analysis above it is evident that the Officers' actions were performed in the discretion of their duties, within the scope of their authority, and with good faith. The summary judgment evidence, including the affidavits of Officer Muniz and the Plaintiff conclusively demonstrate that a reasonably prudent officer could have believed probable cause existed to arrest Plaintiff and that a reasonably prudent officer might have determined to use the same amount of force necessary to gain control of and handcuff Plaintiff after he resisted. The Officers are entitled to official immunity for all the state law claims.[9]

### *Official Capacity*

At the hearing on this motion Plaintiff informed the Court he no longer wanted to pursue claims against the Officers in their "official capacity." All claims against the Officers in their "official capacity" are therefore dismissed.

### Conclusion

The Court would like to acknowledge the well-intentioned motivations of all parties in this case. However, after reviewing the record, the briefs of the parties, and the applicable law, the Court has determined a constitutional violation did not occur and the Officers acted reasonable under the circumstances. Accordingly, the Officers are entitled to summary judgment. Regarding Plaintiff's federal law claims, the Officers are entitled to qualified immunity. Regarding Plaintiff's state law claims, the Officers are entitled to official immunity. Specifically, Plaintiff's false arrest claim fails because the Officers had probable cause to make the arrest. Furthermore, Plaintiff's excessive force and assault claims fail because the officers used force that was objectively reasonable in light of the circumstances. Since the Court finds there was no excessive force, Plaintiff's failure to intervene claim also fails. Additionally, the federal malicious prosecution claim standing alone does not amount to a constitutional violation. Furthermore, the existence of probable cause defeats Plaintiff's federal and state law malicious prosecution claims.

For the foregoing reasons, the Officers are entitled to qualified and official immunity for all of Plaintiff's claims. Accord-

---

9. Although the Court has not specifically addressed the claim of intentional infliction of emotional distress ("IIED"), this claim is dismissed because the Officers are entitled to official immunity. Furthermore, if the Court were to indulge a discussion about IIED, Plaintiff's claim would fail because the Officers' conduct was found to be reasonable and cannot be labeled as extreme and outrageous. The Texas Supreme Court has adopted the Restatement (Second) of Torts' standard for an IIED tort: "The Restatement elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or reck-

lessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). Extreme and outrageous conduct is defined as conduct so outrageous in character that it goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized society. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex.2003). In the present case, the Officers' conduct does not rise to the level of "extreme and outrageous" behavior.

ingly, the Officers Motion for Summary Judgment (Docket No. 29) is GRANTED. It is so ORDERED.